## SMITHFIELD PEAT CO., INC.

v.

## SCOTT–LEE CONSTRUCTION CO., INC. et al.

### No. 85–566 Appeal.

Supreme Court of Rhode Island.

May 14, 1987.

George M. Prescott, Oster, Groff & Prescott, Providence, for plaintiff.

Robert Fine, Huseby, Robert, Licht & Semonoff, Paul J. Bogosian, Jr., Hodosh, Spinella & Angelone, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This litigation, which was initiated over eight years ago, involves the proceeds of a construction-loan mortgage, the borrower, the lender, the building contractor, and a subcontractor who appeals a Superior Court justice's grant of the borrower's motion for summary judgment. There is no dispute about the facts that give rise to the sole issue presented to the Superior Court justice.

In late February 1978 Citizens Savings Bank (Citizens) issued a construction-loan mortgage to Ralph and Marion Camuso (the Camusos). The proceeds of the $36,000 mortgage were to be used in financing the construction of a single-family home in the town of Lincoln. The Camuso's contractor, Scott-Lee Construction Co., Inc., during the construction process had employed Smithfield Peat Co., Inc. (Smithfield), to perform some excavation work upon the mortgage premises. In mid-April 1978 Smithfield's attorney hand-delivered to Citizens mortgage department a document entitled "Demand for Direct Pay-

ment Pursuant to G.L.R.I. (1956) § 34–27.-1–1." At the time of the delivery of the notice, Citizens had advanced $24,000 to the contractor. The Camusos, upon being made aware of Smithfield's demand, notified Citizens that they disputed the amount sought by Smithfield. Later, in mid-August 1978, the Camusos requested that Citizens convert the $24,000 that had been advanced for construction purposes into a permanent financing agreement. Citizens complied with said request.

Section 34–27.1–1 made its first appearance with the passage of Public Laws 1973, ch. 136.[1] In essence it provided that in situations in which the face amount of a construction-loan mortgage was less than $100,000 and the mortgagee had been properly notified by a "subcontractor" that the "subcontractor" had not been paid, the lender "shall," from any funds remaining in its hands, either (1) make a check payable to the joint order of the owner and the subcontractor for the amount of the unpaid claim, with a check for any balance being issued to the owner or the lessee, or (2) withhold an amount equal to the amount alleged to be due the unpaid claimant. Another portion of the statute provides that if the owner gave the lender notice by registered mail that there was a dispute over the satisfactory performance of the claim, then the amount alleged due the claimant should not be paid by the mortgagee until the issue was resolved. Section 34–27.1–1(b).

In its relevant portions, Smithfield's demand reads: "Demand is being made upon you as mortgagee, under a certain deed of mortgage executed February 21, 1978 by said Ralph Camuso and Marion Camuso, mortgagees, * * * for direct payment of $9,733.15, the unpaid balance due for excavating work performed by Smithfield Peat Co., Inc., subcontractor upon the mortgage premises."

As noted earlier, the Legislature has afforded a subcontractor with alternative remedies, either (1) the execution of a check payable to the joint order of the owner and claimant or (2) withholding an amount equal to the claimed amount due the unpaid "subcontractor." Of course, if the owners claim that the work has been unsatisfactory, no payment is to be made until the dispute is resolved. Conspicuous by its absence in the statute, however, is a provision for the direct-payment demand made in this dispute by Smithfield.

It appears that Rhode Island is one of only a few states that has enacted provisions similar to § 34–27.1–1. Such legislation is usually referred to as a "stop notice" statute. In 3 Stein, *Construction Law*, § 14.08 at 14–377 (1986), the following observation can be found:

"The rationale given for these statutes is that mechanics' liens do not afford adequate protection to contractors. In many states, the construction loan mortgage is superior to subsequently filed mechanics' liens. Thus, foreclosure of the construction mortgage would wipe out a mechanic's or materialman's lien. However, a stop notice would survive foreclosure since it is a claim against the undisbursed construction loan proceeds and not the property."

Similar sentiments have been expressed in Reitz, *Construction Lenders' Liability to Contractors, Subcontractors, and Materialmen*, 130 U.Pa.L.Rev. 416, 432–34 (1981). Again, another comment describes such statutes as creating "a statutory lien upon the construction funds in the hands of the lender."[2] *Construction and Design Law*, § 9.6d at 22 (Michie Co. 1984).

Most "stop notice" statutes appear to provide only for a halt to or stoppage of disbursement of funds and not any issuance of a jointly payable check as in § 34–27.1–1. *See, e.g.,* Alaska Stat. § 34.-

---

**1.** General Laws 1956 (1969 Reenactment) § 34–27.1–1, as enacted by P.L.1973, ch. 136, § 1, has been amended twice since its original enactment—once by P.L.1979, ch. 375, and again by P.L.1984, ch. 101. Some pertinent and significant changes were effectuated by the 1984 amendment. The amount of available proceeds was increased from "under $100,000" to "under $500,000," and "materialmen" joined the subcontractors as beneficiaries of this legislation.

**2.** Our reference to this theory is by no means an indication that § 34–27.1–1 creates a lien. We leave that question to another day.

35.062 (1985); Cal.Civ.Code Ann. § 3162 (West 1974); Colo.Rev.Stat. § 38–22–102 (1982); and Wash. Rev. Code Ann. § 60.04.-210 (West 1987 Cum.Supp.). However, none of these statutes provided the remedy of direct payment to the unpaid claimant.

Here at most all Smithfield was entitled to was to have Citizens issue the joint check or withhold further payment "from any funds remaining in its hands." Section 34–27.1–1(a). Before us, Smithfield relies on the language in a portion of § 34–27.1–1 that relates to a dispute about the quality of work and the withholding of funds. This provision, it argues, makes Citizens liable for any judgments Smithfield may obtain against the contractor or the Camusos. However, the plain language of the statute does not support the position taken by Smithfield.

The sole issue before the Superior Court justice was the validity of Smithfield's demand for direct payment. This payment is what Smithfield sought, but because of the absence of any such language in the 1973 legislation, the trial justice cannot be faulted for finding that Citizens was entitled to a summary judgment.

Smithfield's appeal is denied and dismissed. The judgment appealed from is affirmed.

FAY, C.J., did not participate.